GOFF AND PAGE COMPANY, Libellant,

v.

THE FORTUNE, her engines, tackle, etc., and Providencia Shipping Co., S. A., her owners, in personam, Respondents.

No. 7795.

United States District Court
E. D. Virginia,
Norfolk Division.
Feb. 29, 1960.

Hugh S. Meredith, Norfolk, Va., for libellant.

Roy L. Sykes, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

This libel is filed by a Rhode Island corporation which is engaged in the business of serving as steamship agent for ocean going vessels of all types. It is alleged, and admitted by the answer, that the Fortune is a vessel owned by Providencia Shipping Co., S. A., a Panamanian corporation, and operated by Fratelli Rizzuto, Genoa, Italy, as general agent for the owner. Libellant's claim arises out of its transactions in behalf of the vessel and her owners from June 28, 1956, to July 17, 1956, while the Fortune was at New Bedford, Massachusetts. Disbursements aggregating $1,262.69 were made by libellant, and bills totaling $3,189.22 were incurred in libellant's name and forwarded to Rizzuto in Italy. Nothing has been paid by either the owners or Rizzuto.

The owner, Providencia Shipping Co., S. A., has admitted *in personam* liability for a portion of the aforesaid $1,262.69, said items being:

| | |
|---|---|
| Cash advanced to master | $500.00 |
| United States Customs fees, entrance and tonnage tax | 232.80 |
| Vessel's bond and preliminary permit | 5.00 |
| Customhouse brokers—entrance | 10.00 |
| Customhouse brokers—clearance | 10.00 |
| | $757.80 |

Additionally, the owner has admitted *in personam* liability for a few items making up the aforesaid $3,189.22, said items being:

| | |
|---|---|
| Dr. Paul Chervinsky—A/C crew | $110.00 |
| Dr. Paul Chervinsky—A/C crew | 20.00 |
| Dr. Joseph (Paul) Siegel—A/C crew | 15.00 |
| Commonwealth of Massachusetts—Division of Waterways—water supplied | 29.27 |
| Total admitted due | $174.27 |

———◆———

The attachment and monition, together with a monition bearing a clause of foreign attachment, were duly issued. Service was accepted *in rem* and *in personam* by Alcoa Steamship Company, as agents for the Fortune and her owner, Providencia Shipping Co., S. A. No attack has been made upon the authority of Alcoa to accept service *in rem* or *in personam*. Alcoa is holding $4,500 as security for the action pending final disposition of the case.

The libellant's services were originally engaged by the charterer of the vessel to act as agent, but, by letter dated June 14, 1956, Rizzuto, acting in behalf of the owner under a Uniform General Charter, likewise designated libellant as the owner's agent. While there is testimony indicating that libellant considered itself as general agent for the vessel, the answer admits that Rizzuto was the general agent and, as such, had complete authority to bind the vessel's owners. Irrespective of the admission of Nelson, representing libellant, it is clear that libellant was, in fact, merely a local or husbanding agent. As Nelson considered Rizzuto as the owner of the vessel, and indeed the owner's address is given in Lloyd's Register as c/o Fratelli Rizzuto, the confusion appearing in Nelson's mind is apparent.

The vessel was chartered by her owners, acting through her agents, to Ucomar, Antwerp, Belgium, under a charter party dated May 19, 1956, providing for a shipment of cement, containing an appropriate provision for stowage of cargo "free-in-and-out", thus signifying that the charterer was required to pay normal loading and unloading charges. Thereafter, on June 2, 1956, there was a second charter entered into between the owner, acting through Rizzuto, and charterer, covering a shipment of naphthaline, providing that the cargo be stowed and discharged free of risk and expense to owner. As there is a substantial item included in libellant's bill for services rendered by New Bedford Stevedoring Corporation amounting to $1,919.01, it is necessary to examine this claim. The charterer paid the regular stevedoring charges for unloading the vessel at New Bedford, but items of detention, handling lines, crane hire when the drum of the starboard winch collapsed due to age and crystallization, and the services of a gate watchman for the vessel ordered by the vessel's master, were all included in a bill from New Bedford Stevedoring Corporation to libellant dated July 25, 1956, as representing proper charges to the vessel and her owners. The Stevedoring Corporation had no knowledge as to the true owner of the vessel, but had been advised that libellant was the vessel's agent. The owner now contends that, under the charter, only the charterer is responsible for the items in controversy. It is clear, however, that, under the terms of the charter, the vessel was obligated to give "free use of winches, light and power as on board, during day and night, free of expense to the charterers." As the detention items, all signed by the vessel's chief officer, were due to the defects in the winches or power operating same, they were properly chargeable to the vessel and her own-

er as far as the stevedore and libellant were concerned. Other items included in the bill of New Bedford Stevedoring Corporation are similarly chargeable to the vessel and her owners. If there exists a controversy between the owner and charterer under the charter party, this is a matter for arbitration. The charter covering the shipment of naphthaline did contain a clause that the cargo would be loaded and unloaded at charterer's risk and expense, but like provisions did not appear in the charter party covering the shipment of cement.

While it is perhaps unnecessary to determine whether the stevedoring item of $1,919.01, together with certain items for stores supplied to the vessel, constitute a maritime lien, the Court is of the opinion that a proper interpretation of the lien statute would include such items. Respondents contend that, since all bills were directed to libellant and all parties looked to libellant for payment, the lien was waived "by agreement or otherwise." For the purpose of billing, the libellant was the vessel's and owner's agent. 46

U.S.C.A. § 972. Unlike The President Arthur, 279 U.S. 564, 49 S.Ct. 420, 73 L.Ed. 846, there was no waiver of lien on the part of parties providing such services and materials. But, as noted, we need not determine this question and the complications involving same by reason of this action having been instituted by libellant, who is legally responsible to the parties whose services and supplies were furnished at libellant's request.

 Assuming arguendo that no maritime lien exists as to any item, it is manifestly apparent that the respondent owner is indebted to libellant for the amounts claimed, save and except some adjustment on the agency fee and certain expenses incurred for the benefit of the charterer. Libellant was, as noted, serving as agent for both charterer and owner. He contends that the custom in such cases indicates the entire charge for the agency fee should be paid by the owner. The custom, if such exists, has not been sufficiently established. The following items are disallowed as properly chargeable to the charterer:

| | |
|---|---:|
| One-half travel expense of agent | $ 17.50 |
| Telephone | 3.85 |
| Postage, etc. | 5.00 |
| Taxi hire | 2.50 |
| One-half agency fee. | 175.00 |
| | $203.85 |

The argument is made that libellant, while having incurred the personal liability for the items aggregating $3,189.-22, has no right to maintain this action in its name. Aside from the fact that libellant filed as an exhibit signed authorizations from the individual suppliers permitting the recovery in the name of libellant, which would clearly bar the right of these suppliers from asserting another claim against the owner or the vessel, the Court will, at the option of respondent, protect the payment in the decree. Furthermore, the principal is liable by way of indemnity to his agent where the agent's own credit is pledged to buy goods or secure services for the benefit of the principal.

A decree will be entered in favor of libellant in the sum of $4,248.06, with interest at six percentum per annum from August 25, 1956, until paid, plus taxable court costs incurred herein.